■ In the Matter of NICOLE TT. et al., Alleged to be Permanently Neglected Children. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CHERYL TT., Appellant. — Yesawich, Jr., J. Appeal from three orders of the Family Court of Broome County (Whiting, Jr., J.), entered April 18, 1983, which adjudicated respondent's three minor children to be permanently neglected, terminated respondent's parental rights and placed guardianship and custody of the children with petitioner.

Respondent is the mother of three children: Nicole, age nine; Melissa, age eight; and Shauna, age five. In September of 1977, petitioner first gained custody of the children Nicole and Melissa. Two years and 10 months later, on July 17, 1980, they were returned to their mother's care and custody. Four months later, Family Court remanded them to petitioner's custody; at that same time, the newborn baby Shauna was also placed in petitioner's custody. Thereafter, the children remained continuously in petitioner's foster care through the filing of the permanent neglect petition on October 18, 1982. Following a fact-finding hearing, the three children were adjudicated permanently neglected within the meaning of Social Services Law § 384-b. Three months later, Family Court held a full dispositional hearing and determined that the children's best interests required termination of their mother's parental rights and placement of guardianship and custody of the children with petitioner. In challenging that decision, respondent urges that the finding of permanent neglect is not supported by clear and convincing evidence, that Family Court improperly terminated her custody prior to the dispositional hearing, and that the termination of her custody is contrary to the best interests of the children.

A determination that a child is "permanently neglected" must rest on clear and convincing evidence thereof (Family Ct Act § 622). A child is deemed "permanently neglected" as a matter of law when the parent of a child in the care of an authorized agency has: "failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child" (Social Services Law § 384-b [7] [a]).

To " 'substantially plan' " means " 'to formulate, and act to accomplish, a feasible and realistic plan' " (*Matter of Orlando F.,*

40 NY2d 103, 110; *see,* Social Services Law § 384-b [7] [c]). During the four months in 1980 when respondent had physical custody of the three children, her apartment, as described by a caseworker who had visited there 10 to 15 times, smelled strongly of soiled diapers, human and animal excrement, urine, dirty laundry and sour milk; garbage and soiled diapers were observed littering the kitchen floor; the children were ill-clad, in dirty clothing, with dried food matted in their hair; and a wide variety of medicines were located on a table in the living room within easy reach. The caseworker concluded that the home was so squalid and the children so poorly attended to that their welfare was "severely jeopardized". Efforts by petitioner to improve respondent's abysmal sanitary habits yielded no improvement.

In addition to her failure to achieve even a primitive level of cleanliness, respondent thwarted attempts by petitioner to assist her in coping with her emotional and financial difficulties associated with parenting. The lack of any plan for the return of the children or for a future with them is apparent from her residence of the year prior to the dispositional hearing: a single room without a kitchen, living room or bathroom.

That she has never held gainful employment would be inconsequential if she had ever shown the initiative to spend her idle hours with her children. Rather, in October of 1981, she requested that her weekly visits with the children, which last only a few hours, be reduced to bimonthly visits. In addition, she has never visited the children's foster home and has often canceled, postponed or forgotten about visits in which petitioner brought the children to her. As Family Court noted, the evidence leads "to the inescapable conclusion that these children are permanently neglected within the meaning of the statute". We agree.

As the evidence clearly and convincingly supports the conclusion that termination of respondent's custodial rights was made in the best interests of the children, the remaining issue to be addressed is whether Family Court impermissibly terminated custody prior to the dispositional hearings held on March 31, 1983 and April 13, 1983. More specifically, respondent maintains that Family Court's decision and order of January 31, 1983, which found the children to be permanently neglected, indicates that the court prematurely decided to terminate her rights in violation of Family Court Act article 6. That article directs a court, which after a fact-finding hearing has found a child to be permanently neglected, to hold a dispositional hearing to determine what order or disposition should be made in the child's best interest (Family Ct Act §§ 623, 625). Family Court

heeded this process, first deciding whether the children were permanently neglected and then conducting a dispositional hearing to direct their future care and custody. Other options remained open to the court for its consideration at the dispositional hearing besides adoption, e.g., long-term foster care (*see, Matter of Christopher T.,* 101 AD2d 997, *lv granted* 63 NY2d 601). Family Court's January 31, 1983 decision foreclosed none of these possibilities. Furthermore, the wide latitude accorded respondent at the dispositional hearing confirms that Family Court's ultimate disposition was not predetermined.

Orders affirmed, without costs. Kane, J. P., Main, Weiss, Yesawich, Jr., and Levine, JJ., concur.