■ In the Matter of SHANNON U., a Child Alleged to be Permanently Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TERESA V., Appellant. (And Two Other Related Proceedings.) [620 NYS2d 851] —Crew III, J. Appeals from three orders of the Family Court of Otsego County (Nydam, J.), entered September 23, 1993, which granted petitioner's applications, in three proceedings pursuant to Social Services Law § 384-b, to adjudicate three of respondent's children permanently neglected children, and terminated respondent's parental rights.

Respondent is the mother of Shannon U. (born in July 1984), Tamra U. (born in Aug. 1985) and Christopher MM. (born in Jan. 1987). In August 1988 respondent married Ralph V., from whom she was separated and in the process of

divorcing as of the hearing in this matter. In December 1988, a neglect petition was filed against respondent and her husband and, ultimately, the children were found to be neglected. Thereafter, as the result of an abuse petition filed against respondent and her husband, Shannon and Tamra were found to have been sexually abused and Family Court determined that respondent and her husband were responsible for such abuse. In October 1989, based upon both petitions, Family Court ordered that the children be placed in petitioner's custody for one year, which placement was extended in October 1990 and October 1991.

In September 1992, petitioner commenced these permanent neglect proceedings to terminate respondent's parental rights.* During the course of the hearing that followed, testimony was adduced from respondent, petitioner's caseworkers and the mental health professionals involved with respondent and her children during the course of these proceedings. Family Court found the children to be permanently neglected and, after a dispositional hearing, terminated respondent's parental rights. These appeals ensued.

The threshold inquiry in any permanent neglect proceeding is whether the petitioning agency has discharged its statutory duty to exercise diligent efforts to encourage and strengthen the parental relationship (see, Social Services Law § 384-b [7]; *Matter of Mary S.*, 182 AD2d 1026, 1027). Diligent efforts, in turn, means reasonable attempts to encourage a meaningful relationship between the parent and his or her children and includes providing counseling, making suitable arrangements for visitation with the children, providing services and other assistance aimed at ameliorating or resolving the problems preventing discharge of the children to the parent's care, and keeping the parent informed of the children's progress and development (see, Social Services Law § 384-b [7] [f]; *Matter of Devon C.*, 186 AD2d 738, 739).

Here, the record reveals that petitioner's caseworkers maintained regular contact with respondent via phone, letters, home visits and personal meetings at petitioner's offices. Additionally, the record reflects that the caseworkers set up service plans in June and December 1989, June and December 1990, June and December 1991 and June 1992, at which times various goals and tasks were set in place for respondent to

---

* Petitioner commenced a similar proceeding against Christopher's father based upon the ground that he had abandoned Christopher (see, *Matter of Christopher MM.*, 210 AD2d 767 [decided herewith]).

assist her in gaining custody of her children. Finally, petitioner's caseworkers arranged for and supervised visitations between respondent and her children, arranged for counseling for respondent as well as parenting classes and supplied respondent with a parent aide and homemaker. Plainly, petitioner identified the problems facing respondent and made "affirmative, repeated, and meaningful efforts" to assist her in overcoming them (Matter of Sheila G., 61 NY2d 368, 385). Accordingly, we conclude that petitioner established by clear and convincing evidence that it satisfied its statutory duty in this regard.

Respondent next contends that petitioner failed to establish by clear and convincing evidence that the children were permanently neglected. We disagree. A permanently neglected child is one in the custody of an authorized agency whose parent has failed, for a period of more than one year, to "substantially and continuously or repeatedly * * * maintain contact with or plan for the future of the child, although physically and financially able to do so" (Social Services Law § 384-b [7] [a] [emphasis supplied]). As we have repeatedly observed, "contact and planning are alternative elements, and proof of failure to perform one is sufficient to sustain a finding of permanent neglect" (Matter of Scotty C., 154 AD2d 784, 786, lv denied 75 NY2d 707).

While the record reveals that respondent maintained contact with her children and generally cooperated with petitioner's caseworkers, there is abundant evidence that her progress over the years was minimal and superficial. Indeed, Howard Berkowitz, a psychologist who met with respondent weekly between November 1991 and April 1992, opined that respondent had no insight into the implications of her actions, that she fell short of doing what was appropriate for her children and that she was not likely to be able to properly care for her children. To the extent that Catherine Paluch, a psychotherapist who worked with respondent, opined that respondent met all the goals petitioner set for her over the years, this merely presented a credibility issue which Family Court resolved in petitioner's favor (see, Matter of Gina RR., 197 AD2d 757, 758). Accordingly, we are of the opinion that the record provides clear and convincing evidence to support Family Court's finding of permanent neglect.

Mikoll, J. P., Mercure, Casey and Yesawich Jr., JJ., concur. Ordered that the orders are affirmed, without costs.