■ In the Matter of JERRY XX. and Others, Children Alleged to be Permanently Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; NORA S., Appellant. [671 NYS2d 160] —Mikoll, J. P. Appeal from an order of the Family Court of Clinton County (McGill, J.), entered December 20, 1996, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respon-

dent's children to be permanently neglected, and terminated respondent's parental rights.

In 1993, as the result of prior proceedings pursuant to Family Court Act article 10, respondent's four children were found to be neglected and placed in foster care; subsequent extensions of the placement were granted. Respondent's previous appeals of the neglect determinations were dismissed as moot (*see, Matter of Jerry XX.,* 243 AD2d 988, 988-989). Petitioner commenced the instant proceeding pursuant to Social Services Law § 384-b in October 1995. Following a 10-day fact-finding hearing which concluded in October 1996, Family Court found the children to be permanently neglected. At the conclusion of the dispositional hearing which followed, respondent's parental rights were terminated and this appeal ensued.

Our review of the voluminous record convinces us that petitioner has more than adequately established, by clear and convincing evidence, satisfaction of its statutory duty to exercise diligent efforts to strengthen the parental relationship and reunite the family (*see, Matter of Star Leslie W.,* 63 NY2d 136, 142; *Matter of Billie Jean II.,* 243 AD2d 771, *lv denied* 91 NY2d 805; *Matter of Michael U.,* 226 AD2d 779, *mots denied* 88 NY2d 805; *Matter of Michelle F.,* 222 AD2d 747; *Matter of Shannon U.,* 210 AD2d 752, *lv denied* 85 NY2d 807).

Petitioner presented extensive evidence of a comprehensive service plan designed to assist respondent in attaining the goal of the return of her children. Formulated to address the particular needs of respondent and her children (*see, Matter of Michael U., supra,* at 781), the plan entailed accessing a multitude of services to enable respondent to plan for the future by ameliorating the conditions resulting in the placement. It included referrals for mental health and alcoholism counseling for respondent, involvement in the education and mental health treatment of her children, parenting classes, the provision of a homemaker to assist respondent in establishing a safe and stable home and developing basic homemaking skills. Petitioner regularly informed respondent about the children's education, health, therapy schedules and their general progress. Petitioner arranged for telephone contact between respondent and her children, and implemented regular supervised visitation. Several adjustments to the visitation plan were undertaken by petitioner in an effort to accommodate respondent's difficulties in managing visitation with all four children simultaneously. The details and objectives of the service plan were reviewed with respondent in regular casework consultations, face-to-face meetings and service plan reviews, in addition to telephone contacts and discussions incidental to visitation.

Two common threads run through the testimony of the many caseworkers and service providers who worked with respondent in furtherance of the plan. First, respondent consistently failed to acknowledge her role in the original placement of the children or her need for any of the proffered services. Rather, respondent attributed the children's problems to their placement in foster care and maintained that their problems would disappear once the children were returned to her. Thus, "[i]t was respondent's intractability * * * not any inadequacies in petitioner's plan, that prevented respondent from being united with [her] children" (*Matter of Jesus JJ.*, 232 AD2d 752, 754, *lv denied* 89 NY2d 809). Second, respondent refused to acknowledge the existence or severity of her children's problems, particularly those of the three older children who were emotionally disturbed, and was consequently unreceptive to treatment recommendations. We further note that respondent had received extensive preventive services for nearly three years preceding the placement of the children. While respondent regularly participated in supervised visitation with the children, we find no evidence that she substantially planned for the future by taking steps to eliminate the very reasons for their placement. "[C]ontact and planning are alternative elements, and proof of failure to perform one is sufficient to sustain a finding of permanent neglect" (*Matter of Scotty C.*, 154 AD2d 784, 786, *lv denied* 75 NY2d 707).

As petitioner has clearly demonstrated fulfillment of its obligation to exercise diligent efforts to strengthen and encourage the parental relationship, we find that Family Court properly terminated respondent's parental rights and freed these children for adoption.

Crew III, Yesawich Jr., Peters and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.